United States Court of Appeals
Fifth Circuit
**FILED**
January 7, 2009
Charles R. Fulbruge III
Clerk

# UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

---

No. 08-50385

---

D.C. Docket No. 5:06-CV-1009-JWP

BRENDA ANTHONY

    Plaintiff - Appellant

    v.

POTEET HOUSING AUTHORITY

    Defendant - Appellee

**FILED**
FEB 2  2009
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
DEPUTY CLERK

Appeal from the United States District Court for the
Western District of Texas, San Antonio.

Before JONES, Chief Judge, JOLLY, Circuit Judge, and CARDONE, District Judge.*

## J U D G M E N T

This cause was considered on the record on appeal and the briefs on file.

It is ordered and adjudged that the judgment of the District Court is affirmed.

IT IS FURTHER ORDERED that plaintiff-appellant pay to defendant-appellee the costs on appeal to be taxed by the Clerk of this Court.

ISSUED AS MANDATE: 2 9 JAN 2009

*United States District Judge of the Western District of Texas, sitting by designation.

A True Copy
Attest

Clerk, U.S. Court of Appeals, Fifth Circuit

By: _____
    Deputy

2 9 JAN 2009

New Orleans, Louisiana

REVISED JANUARY 12, 2009
IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**
January 7, 2009

Charles R. Fulbruge III
Clerk

No. 08-50385

BRENDA ANTHONY

                Plaintiff - Appellant

v.

POTEET HOUSING AUTHORITY

                Defendant - Appellee

Appeal from the United States District Court
for the Western District of Texas
USDC No. 5:06-CV-1009 - JWP

Before JONES, Chief Judge, JOLLY, Circuit Judge, and CARDONE, District Judge.[*]

KATHLEEN CARDONE, District Judge:[**]

    Brenda Anthony seeks a refund of rent payments paid to her landlord Poteet Housing Authority on the basis of 24 C.F.R. § 5.609(c)(16). The magistrate judge granted summary judgment in favor of Defendant. For the

---

[*]United States District Judge, Western District of Texas, sitting by designation.

[**]Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

1

No. 08-50385

reasons set forth below, we affirm.

## BACKGROUND

Appellant Brenda Anthony ("Anthony") qualifies for and lives in low-rent public housing owned and managed by Appellee Poteet Housing Authority ("PHA") in Atascosa County, Texas. Anthony has lived in the PHA apartment with her three sons since 2000. Anthony's oldest son, Gilbert Anthony ("Gilbert"), is twenty-three years old and is severely disabled as a result of multiple sclerosis.[1] Gilbert was disabled throughout the time that he and Anthony lived in the apartment.

Gilbert qualifies for personal-care attendants, as well as other services, through the State of Texas Community Based Alternatives Program ("CBA"), under which state and federal money is used to provide in-home care for individuals as a cost-effective alternative to institutional placement. CBA is funded through a Medicaid waiver which permits Texas to provide services that are unavailable under the standard Medicaid program. As required by federal regulations, Texas delegates responsibility for its Medicaid program to a single agency, the Department of Health and Human Services.

CBA services had been provided by private companies under contract with the State of Texas Department of Aging and Disability Services ("DADS"). On January 1, 2007, STAR+PLUS, a pilot program, replaced DADS in Atascosa County. Participation in STAR+PLUS is mandatory for individuals seeking to receive CBA services in that county.

STAR+PLUS is administered entirely though private health maintenance organizations ("HMO") which are approved by the Texas Department of Health

---

[1] Gilbert resided with Anthony in the PHA apartment until approximately March 1, 2008, when Gilbert was hospitalized.

2

and Human Services for Medicaid funding. Those HMO's develop an individualized plan of care with each CBA participant and his or her family and authorize services pursuant to that plan. The plan of care describes the services and equipment to be provided, and sets out the cost of the care. Each plan must be approved by the State. Additionally, a reassessment of the plan is performed annually.

Gilbert is bed-bound and requires assistance for tasks such as bathing, meal preparation and feeding, changing diapers, grooming, dressing, exercising, and taking medications. Gilbert began participating in the CBA Program when he turned 21 years of age, on November 22, 2004, and continued to participate after STAR+PLUS was implemented. Each of Gilbert's annual CBA plans provided for personal-assistance services. Gilbert first received services from MED TEAM, Inc. ("MED TEAM"). Beginning April 12, 2007, Gilbert's provider was Saldivar Primary Home Care SA ("Saldivar"). MED TEAM and Saldivar are both for-profit corporations whose sources of revenue include private insurance, Medicare, and direct payments.

In November 2004, Anthony began employment with MED TEAM as a personal-care attendant. As part of her employment, she provided CBA services to Gilbert. However, MED TEAM was not required to assign Anthony to care for Gilbert. Additionally, Anthony was required to serve as a backup for other personal-care attendants and to care for other MED TEAM clients. Anthony earned approximately $13,156.00 annually as an employee of MED TEAM, and these wages were subject to federal income tax, which Anthony paid. On April 12, 2007, Anthony ended her employment with MED TEAM because MED TEAM decided that it no longer wanted to provide CBA services to Gilbert. Beginning April 26, 2007, Anthony, along with another individual, was employed

by Saldivar as personal care attendants for Gilbert. Saldivar contracts with Superior HealthPlan, Inc. ("Superior") to provide services to CBA/STAR+PLUS qualified individuals, including Gilbert. Saldivar receives reimbursement from Superior, which in turn receives reimbursements from the State of Texas and the federal government through Medicaid. As with her employment at MED TEAM, Anthony's wages from Saldivar were subject to federal income tax, which Anthony paid. As with the MED TEAM arrangement, the CBA/STAR+PLUS Program allows a family member to be assigned as the home health provider for the participant, though there is no requirement that the provider be a family member. Also with the MED TEAM arrangement, Anthony is subject to being called as a backup for other home health providers to care for other participants. Finally, as with MED TEAM before it, Saldivar has the authority and discretion to assign any home health provider to care for Gilbert, though it chose to accommodate Gilbert by hiring his mother.

Tenants of public housing, such as Anthony, pay either income-based or flat rent. Because Anthony elected to pay income-based rent, PHA calculates Anthony's rent according to a formula established by Congress and the Secretary of Department of Housing and Urban Development ("HUD"). The formula provides that tenants must pay the greater of thirty percent of their monthly-adjusted income; ten percent of their gross monthly income; or a minimum rent set by each public housing authority. See 42 U.S.C. § 1437a(a)(1)-(3). PHA considered Anthony's wages from MED TEAM and Saldivar as income for the purposes of determining her rent, with the exception of income excluded under the earned income disregard rule, which is not at issue in this case. Anthony contends that PHA miscalculated her rent because MED TEAM and Saldivar wages qualify for an income exclusion under 24 C.F.R. § 5.609(c)(16). Anthony

4

No. 08-50385

alleges that the miscalculation resulted in overpaid rent in the amount of $5,893.[2]

On November 16, 2006, Anthony sued PHA in the Western District of Texas. The parties consented to have a Magistrate Judge conduct the proceedings, with appeal directly to this Court. After the lawsuit was filed, PHA requested that HUD issue an opinion on whether PHA's calculation of Anthony's rent calculation violates 24 C.F.R. § 5.609(c)(16). HUD's assistant general counsel responded with a letter stating that its regulation did not apply to Anthony's earnings. On March 20, 2008, Magistrate Judge John W. Primomo granted PHA's Motion for Summary Judgment and denied Anthony's Motion for Summary Judgment. This timely appeal followed.

## DISCUSSION

### A. Standard of Review

When the parties have consented to the exercise of jurisdiction by a magistrate judge, this Court reviews the magistrate judge's grant of summary judgment de novo. *Cavalier v. Caddo Parish School Bd.*, 403 F.3d 246, 249-50 (5th Cir. 2005). The Court applies the same standard as the trial court, viewing the facts in the light most favorable to the nonmovant. *Hampton Co. Nat. Sur., LLC v. Tunica County, Miss.*, 543 F.3d 221, 224 (5th Cir. 2008). Summary judgment is appropriate "when no issue of material fact exists and the moving party is entitled to judgment as a matter of law." *Id.* (citing *Mowbray v. Cameron County, Tex.*, 274 F.3d 269, 278-79 (5th Cir. 2001)).

---

[2] Anthony states in her Reply Brief that since the start of this litigation, Gilbert has returned home, and Anthony is once again paying increased rent.

5

## B. Interpreting the Regulation

Because the plain language of the regulation favors PHA's position, the Court need not consider the HUD letter in construing the regulation. When interpreting a regulation, this Court "look[s] first to the regulation's plain language." *Anthony v. United States*, 520 F.3d 374, 380 (5th Cir. 2008) (citing *Lara v. Cinemark, U.S.A., Inc.*, 207 F.3d 783, 787 (5th Cir. 2000)).[3] Additionally, a "regulation should be interpreted in a manner that effectuates its central purposes." *Id.* (quoting *Jochum v. Pico Credit Corp. of Westbank, Inc.*, 730 F.2d 1041, 1047 (5th Cir. 1984)). Further, "courts should not interpret an agency regulation to thwart the statutory mandate it was designed to implement." *Id.* (quoting *Jochum*, 730 F.2d at 1047).

The dispute in the instant case centers on whether Anthony's wages are (1) "[a]mounts paid by a State agency to a family," and (2) intended "to offset the cost of services and equipment needed to keep the developmentally disabled family member at home[.]" 24 C.F.R. § 5.609(c)(16).

The regulation does not specifically address whether funds paid by a state to a family member after passing through a private entity are excluded from the term "annual income." Additionally, all state-funded in-home attendant- care services in Texas are provided by private intermediaries, and Texas does not provide any amounts directly to families to offset costs incurred to keep a disabled family member at home. Accordingly, this Court cannot determine how allowing pass-through funds would affect the regulation's central purposes. However, assuming that the regulation allows for pass-through funds to be

---

[3] "We have consistently held that a regulation should be construed to give effect to the natural and plain meaning of its words." *S.D. ex rel. Dickson v. Hood*, 391 F.3d 581, 594-95 (5th Cir. 2004) (citations omitted).

excluded from annual income, the regulation is clear regarding "offset[ting] the cost of services and equipment needed to keep the developmentally disabled family member at home[.]" One must incur costs before they can be offset. In the instant case, Anthony has incurred no costs which must be offset with state funds. The record demonstrates that MED TEAM and Saldivar paid Anthony to provide Gilbert with in-home care with money partially provided by the state. However, the fact that Anthony's employment income coincides with state funds that are set aside for her son's care does not make that income a form of reimbursement.

Anthony argues that "[a]ttendant services provided by the CBA individual services plan for Gilbert have a cost. They are not free." However, for Anthony, they are free. She has no out-of-pocket expenses – "costs" – that must be reimbursed or "offset" by the state. Anthony's argument, that she "is paid to compensate [offset] for the cost," only makes sense if the regulation is read to exclude payments to offset *the State's* costs, as the State is ultimately the party paying for Gilbert's attendant home care. Anthony's reading, therefore, has no support in the language of the regulation.

Anthony further argues that another exclusion – 24 C.F.R. § 5.609(c)(4) – would make § 5.609(c)(16) redundant were the latter interpreted to require direct reimbursement of Anthony's costs. Section 5.609(c) excludes from annual income "[a]mounts received by the family that are specifically for, or in reimbursement of, the cost of medical expenses for any family member." 24 C.F.R. § 5.609(c)(4). The term "medical expenses" includes attendant care. *See* PUBLIC HOUSING OCCUPANCY GUIDEBOOK, 135 (2003).

However, medical expenses specifically exclude expenses paid by insurance, and Gilbert's STAR+PLUS funds are paid by Medicaid. *See* 24 C.F.R.

7

No. 08-50385

§ 5.603. In addition, § 5.609(c)(16) provides for more than just "medical expenses," as it covers any "cost" incurred by a family with a disabled member for "services and equipment needed to keep the developmentally disabled family member at home[.]" *Id.* § 5.609(c)(16). While these two exclusions may potentially overlap, each exclusion addresses different costs or expenses incurred by a family with a disabled member. Accordingly, the exclusions are not redundant.

In conclusion, even if § 5.609(c)(16) is unclear regarding whether pass-through funds may be excluded from annual income, the regulation's plain language does not support excluding wages designed to offset costs exclusively incurred by the state. Under the regulation, Anthony's wages earned as Gilbert's personal-care attendant are not to be excluded from PHA's calculation of her rent.

## CONCLUSION

For the reasons stated, the judgment of the magistrate court is **AFFIRMED**.